# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KENDRA LAMB,                                    Case No. 1:19-cv-1091
      Plaintiff,                        Black, J.
                                               Litkovitz, M.J.
vs.

COMMISSIONER OF                                **REPORT AND**
SOCIAL SECURITY,                               **RECOMMENDATION**
      Defendant.

Plaintiff Kendra Lamb brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

for judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying her applications for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 10), the

Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 16).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in December 2014 alleging disability

since August 1, 2014, due to degenerative disc disease, low blood pressure, arthritis in her hands

and back, carpel tunnel syndrome, kidney disease, and restless leg syndrome. (Tr. 379-80).

Plaintiff also reported anxiety and depression. (Tr. 388). The applications were denied initially

and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo*

hearing before administrative law judge (ALJ) Thomas Ciccolini on October 24, 2017. At

plaintiff's request, the ALJ held a supplemental video hearing on July 24, 2018, at which

plaintiff's counsel examined medical expert Adebowale Akintayo, M.D.[1] On September 21,

---

[1] Vocational Expert testimony was not elicited at either hearing. Instead, the vocational expert completed interrogatories. (*See* Tr. 434-40).

2018, the ALJ issued a decision denying plaintiff's DIB and SSI applications.  The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2018.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since August 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease ("DDD"), arthritis, carpal tunnel syndrome ("CTS"), kidney failure, depressive disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity [(RFC)] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations: The [plaintiff] can perform unskilled work (SVP 1-2). She cannot participate in arbitration, mediation, or negotiation. She cannot be responsible for the care or welfare of others. She can only occasionally interact with peers and coworkers. The [plaintiff] is limited to low stress work -- meaning no more than low production quotas.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] . . . was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 28-33).

---

[2] Plaintiff's past relevant work was as a warehouse worker, an administrative clerk/retail cashier/stocker/storekeeper, and a retail department manager. These positions range from unskilled, semi-skilled, to skilled, and from light to medium exertion. (Tr. 32, 437).

[3] The ALJ relied on the VE's interrogatory responses to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as the job of document preparer (125,000 jobs in the national economy), the job of sorter (19,000 jobs in the national economy), and the job of final assembler (17,000 jobs in the national economy). (Tr. 33). The VE's interrogatory responses included the job of addresser (6,000 jobs in the national economy) in lieu of the final assembler occupation cited by the ALJ. (Tr. 439).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

5

**D.     Relevant Medical Opinions**

*1.     Dr. Akintayo, medical expert*

The ALJ retained the services of a medical expert, who reviewed the medical evidence and completed a Medical Source Statement and Interrogatory (medical interrogatory) on February 4, 2018.  (Tr. 924-32).  After reviewing the record, Dr. Akintayo opined that plaintiff could occasionally lift up to 20 pounds and occasionally carry up to 10 pounds.  (Tr. 924).  She could sit for 6 hours in an 8-hour workday, 1 hour continuously; stand 1 hour, 30 minutes continuously; and walk for 1 hour, 30 minutes continuously.  (Tr. 925).  According to Dr. Akintayo, plaintiff could occasionally climb stairs, climb ramps, and balance but never climb ladders or scaffolds, stoop, kneel, crouch, or crawl.  She could never reach overhead; occasionally reach in all other directions and push/pull; and continuously handle, finger, and feel. (Tr. 926).  She could use her feet frequently to operate foot controls.  (*Id.*).  She could never be exposed to unprotected heights; occasionally move mechanical parts, operate a motor vehicle, and tolerate vibrations; and frequently tolerate humidity and wetness, pulmonary irritants, and extreme temperatures.  (Tr. 928).

When responding to the medical interrogatory, Dr. Akintayo identified plaintiff's impairment as degenerative disc disease, referencing (1) lumbar spine MRIs from 2005, 2014 and 2015 showing spondylosis at L5 S1 with encroachment that could result in pain, neuropathy, and sensory loss, and (2) examination findings from January 2011 showing limited range of motion of the spine on extension, forward bending, and lateral flexion.  (Tr. 930).  Dr. Akintayo opined that plaintiff's impairment did not meet listing 1.04(A), even though there was some

evidence of nerve root encroachment (pain and limitation of motion of the spine), because plaintiff had no motor loss, weakness, or sensory loss, and her straight leg raise test was negative in January 2011. (Tr. 931). He opined that plaintiff's impairment did not meet listing 1.04(C), even though plaintiff has lumbar spinal stenosis resulting in pseudoclaudication, because she exhibited no chronic weakness resulting in the inability to ambulate effectively. (*Id.*).

At the July 24, 2018, supplemental video hearing, Dr. Akintayo testified that plaintiff could perform light work and "[s]it and stand four hours a day." (Tr. 84). He testified that the evidence showed degenerative disc disease but that "[i]t just does not meet or equal a listing." (*Id.*). Dr. Akintayo continued that plaintiff had pain consistent with nerve root encroachment found in degenerative disc disease. (Tr. 85). He agreed with a hypothetical from plaintiff's counsel that it would "not be unreasonable that an individual with [plaintiff's] conditions would be limited to . . . working . . . four hours and then being done after that[.]" (Tr. 86).

2.    *Nancy Schmidtgoessling, Ph.D., consultative examiner*

Dr. Schmidtgoessling provided a psychological assessment of plaintiff for disability purposes on April 17, 2015. (Tr. 703-11). When Dr. Schmidtgoessling asked about plaintiff's chief complaint, she reported that it was the limitation "in her ability to work because of 'degenerative disc disease in [her] lower back.'" (Tr. 703-04). Plaintiff reported that she worked successfully in the past and had never been fired. (Tr. 704). Dr. Schmidtgoessling found plaintiff's hygiene to be adequate. (Tr. 707). Plaintiff was cooperative and did not demonstrate any unusual motor behaviors, hyperactivity, or abnormal speech. (*Id.*). Plaintiff reported poor sleep, depression, and anxiety. (Tr. 707-08). Dr. Schmidtgoessling noted that plaintiff teared up

when talking about her father, who died two days prior to the assessment, but she did not otherwise observe behavioral signs of depression, mania, or anxiety. (Tr. 707-08). Dr. Schmidtgoessling observed that plaintiff was alert, responsive, and able to understand and follow directions. (Tr. 708). She noted plaintiff's average work pace, adequate memory, average intelligence, and fair insight and judgment—though plaintiff gave up easily on cognitive questions. (Tr. 708-09). Though plaintiff did not describe having social anxiety, paranoia, or psychotic symptoms that would negatively impact her ability to interact with others, Dr. Schmidtgoessling opined that plaintiff may have some difficulty tolerating work stress due to her panic attacks, crying spells, and depression. (Tr. 711).

### 3.      State agency physicians

In May 2015, after reviewing plaintiff's file, state agency physician Diane Manos, M.D., found that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and stand, walk, and/or sit for about 6 hours in an 8-hour workday. (Tr. 123-24). Dr. Manos limited plaintiff to occasionally climbing ramps/stairs, stooping, or crawling and never climbing ladders/ropes/scaffolds. (Tr. 124). She found that plaintiff could frequently balance, crouch, and kneel. (*Id.*). Dr. Manos further opined that due to plaintiff's problems with back pain and sacroiliac joint pain, she should not be around unprotected heights and dangerous machinery. (Tr. 125). In August 2015, William Bolz, M.D., reviewed plaintiff's file upon reconsideration and affirmed Dr. Manos's assessment. (Tr. 157-59).

####            4.      *State agency psychologists*

In May 2015, state agency psychologist Kristen Haskins, Psy.D., reviewed plaintiff's file and found that plaintiff had mild restrictions in her activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace but had no episodes of decompensation.  (Tr. at 122).  Dr. Haskins concluded that plaintiff's depression and anxiety impacted her ability to complete tasks and focus but that plaintiff retained the ability to attend and concentrate for periods of two hours as is required in the workplace.  (Tr. 126).  Dr. Haskins noted that plaintiff would benefit from short cycle tasks and would do best in a setting with only superficial contact with supervisors, static tasks, and at most moderate pace, time, and production demands.  (Tr. 126-27).  Dr. Haskins noted moderate limitation in plaintiff's ability to respond to changes in the work setting.  (Tr. 127).  In July 2015, state agency psychologist Vicki Fernandez, Psy.D., reviewed the file at the reconsideration level and affirmed Dr. Haskins's mental residual functional capacity assessment. (Tr. 155, 159-61).

**E.      Specific Errors**[4]

On appeal, plaintiff alleges that the ALJ erred in his determination that plaintiff has the RFC for sedentary work with additional limitations.  In particular, plaintiff argues that the ALJ's decision in this regard is not supported by substantial evidence because the ALJ did not consider

---

[4] Plaintiff's arguments concern the ALJ's evaluation of her physical impairments; therefore, plaintiff has waived any challenges regarding her mental impairments.  *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

Dr. Akintayo's supplemental video hearing testimony that, according to plaintiff, "demonstrates that [p]laintiff's impairments preclude her from performing full time work. . . ." (Doc. 10 at PAGEID 1340). The Commissioner responds that the ALJ's discussion of Dr. Akintayo's medical interrogatory combined with the record as a whole demonstrates that the ALJ considered both Dr. Akintayo's medical interrogatory and testimony and based his RFC decision on substantial evidence.

Plaintiff also contends that the ALJ failed to properly evaluate her symptom severity consistent with 20 C.F.R. § 404.1529[5] and the factors identified therein. The Commissioner responds that the ALJ's decision identifies both this regulation and the corresponding Social Security Administration (agency) ruling. The Commissioner points out that, in addition to objective medical evidence, the ALJ specifically referenced plaintiff's treatment and the opinions of state agency physicians in his decision. The Commissioner therefore argues that the ALJ's finding regarding plaintiff's symptom severity is based on substantial evidence.

### 1. Dr. Akintayo's testimony

In his decision, the ALJ refers to the medical interrogatory completed by Dr. Akintayo (Tr. 25, 31) and the supplemental video hearing at which plaintiff had an opportunity to cross examine Dr. Akintayo (Tr. 25). Plaintiff argues that during the latter, Dr. Akintayo clarified his earlier medical interrogatory responses and expressed the opinion that plaintiff could work only a

---

[5] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Report and Recommendation.

*maximum* of approximately four hours per day, i.e., part-time.  Plaintiff cites the following

exchanges from the supplemental video hearing in support of her position:

> Q. [Y]ou said in the evaluation . . . that she had a light RFC . . . , are you familiar
> with Social Security's definition of light work?
> . . .
>
> A. Yes.
> Q. Okay.  And was it your opinion in the interrogatory . . . that you thought she
> could do light work?
> A. Yes.  Sit and stand four hours a day.  She can do light, yes.
> Q. Okay.  And then and that's just for four hours a day?
> A. I'm sorry?[6]
> Q. And that's just for four hours out of a –
> A. Yes, there about, there about.
> . . .
>
> Q. Okay.  And then, given her diagnoses, is it not unreasonable that an individual
> with those conditions would be limited to, like you said, working those four hours
> and then being done after that?
> A. I agree, yes.  It's not in conflict.
> . . .
>
> Q. Provided the residual functional capacity that you gave her at light . . . because
> it's not a full range of light, only doing it for four hours, how did you arrive at
> being able to lift that much even in the four hours?
> . . .
>
> Q. Even if she's doing [lifting and carrying] occasionally, it would be limited to
> four hours and then that's a wrap?
> A. Yes.  Yeah.  I wouldn't want her to even do that consistently for four hours.  It
> would be occasionally within that period.

(Tr. 84, 86-88).  Based on this testimony, plaintiff argues that "it is entirely clear that this

testimony clarified his earlier written statement in a way that is perfectly obvious.  But, *at* best,

the evidence . . . is conflicting."  (Doc. 10 at PAGEID 1341).

---

[6] At this point, among others, the supplemental video transcript suggests audio issues.  (*See, e.g.,* Tr. 87 ("A. Hello?
Q. Can you hear us?  Can you hear me?"); Tr. 88 ("Q. And let me just clarify, because I can't hear you clearly.")).

The governing regulations require that the ALJ consider all medical opinions in the record. *See* 20 C.F.R. § 404.1527(b) ("[W]e will always consider the medical opinions in your case. . . ."); 20 C.F.R. § 404.1527(c) ("[W]e will evaluate every medical opinion we receive."). This includes a discussion of the weight assigned to such opinions. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 258 (6th Cir. 2015) (ALJ's failure to explain weight to treating and examining physicians prevented meaningful review of ALJ's decision).

Here, the ALJ's decision discussed only the opinions contained in Dr. Akintayo's February 2018 medical interrogatory. (Tr. 31). The ALJ did not agree or disagree with Dr. Akintayo's opinion therein as it related to plaintiff's applicable exertion level, stating only that "Dr. Akintayo opined that the claimant is limited to work at the sedentary exertional level with frequent change of position" and reciting Dr. Akintayo's exertional limitations. (*Id.*). The ALJ then assigned little weight to Dr. Akintayo's opinion as to plaintiff's non-exertional limitations, stating it was inconsistent with the objective medical evidence. (*Id.*). The ALJ says nothing at all, however, regarding Dr. Akintayo's supplemental video hearing testimony, during which he appears to offer an unsolicited opinion that plaintiff is limited to a four-hour workday. (*See* Tr. 84). In addition, as noted above, the ALJ believed that Dr. Akintayo's medical interrogatory limited plaintiff to sedentary work. (*See* Tr. 31). (*Compare* Tr. 924 (Dr. Akintayo's opinion that plaintiff was limited to occasionally carrying up to 10 pounds) *with* 20 C.F.R. § 404.1567(b) (requiring frequent carrying of objects weighing 10 pounds for light work); SSR 83-10,[7] 1983

---

[7] The Sixth Circuit has commented on the force of agency rulings:

> Social Security Rulings do not have the force and effect of law, but are "binding on all components of the Social Security Administration" and represent "precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner. 20 C.F.R. §

WL 31251, at *5 (same).  In Dr. Akintayo's supplemental video testimony, however, he acknowledged that he understood the agency's definition of light work and that plaintiff was capable of it.  (*See* Tr. 84).

The RFC evaluation contemplates a claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *2.  Courts within this district have further observed that a claimant's limitation to part-time work likely precludes a finding that such a claimant is "not disabled."  *See, e.g., Lawson v. Astrue*, 695 F. Supp. 2d 729, 748 (S.D. Ohio 2010) (collecting cases in which courts have found that only an ability to perform full-time work can result in a "not disabled" finding); *Robinson v. Comm'r of Soc. Sec.*, No. C-1-06-848, 2009 WL 3124217, at *14 (S.D. Ohio Sept. 29, 2009) (same).  Therefore, Dr. Akintayo's July 2018 opinion that plaintiff should be limited to part-time work is in apparent conflict with the ALJ's determination that plaintiff is not disabled.  There is likewise ambiguity in Dr. Akintayo's opinions regarding plaintiff's applicable exertional level.  The ALJ did not question Dr. Akintayo about either issue during the supplemental video hearing and his decision is likewise silent on these issues.

Based on the foregoing, it is not clear whether the ALJ overlooked, ignored, or rejected the opinion expressed in Dr. Akintayo's supplemental video testimony, which could support the conclusion that plaintiff is disabled.  *See Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir.

---

402.35(b)(1).  In [*Wilson*, 378 F.3d at 549], the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but assumed that they are.  We make the same assumption in this case.

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 (6th Cir. 2010).

1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review.").  *See also Morrison v. Comm'r of Soc. Sec.*, No. 1:13-cv-722, 2014 WL 7409752, at *13 (S.D. Ohio Dec. 31, 2014) (holding that "the ALJ overlooked, ignored, or rejected" a medical opinion, where the ALJ's opinion made no mention the opinion that was inconsistent with the ALJ's determination of the plaintiff's RFC).  Conflicts in the evidence such as those in the instant record must be resolved in the first instance by the ALJ and not the Court.  *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 538 (6th Cir. 2014) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).  It was incumbent on the ALJ to weigh Dr. Akintayo's opinion that plaintiff was limited in her ability to perform a full 8-hour workday, and in the absence of any indication in the ALJ's decision that he did so, the Court is unable to meaningfully review the ALJ's decision.  The Court therefore concludes that plaintiff's first assignment of error should be sustained.

The Court is not persuaded otherwise by the Commissioner's reference to *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433 (6th Cir. 2012), which held that "[s]o long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review."  *Id.* at 440.  In *Norris*, the plaintiff challenged the ALJ's decision on the basis that it gave greater weight to nonexamining than to nontreating sources without sufficient justification.  *Id*. at 438-39.  Affirming the ALJ's decision, the Sixth Circuit concluded that, "[w]hile perhaps the ALJ could have provided greater detail,"  the ALJ had adequately explained the weight afforded to the respective opinions.  *Id.* at 440.

Specifically, the ALJ had identified specific inconsistencies in the opinions of the nontreating sources and determined that the nonexaming source opinions were more consistent with the treating source's opinion. *Id.* at 439-40. These facts are distinguishable from the situation at bar. Contrary to the ALJ in *Norris*, the ALJ here omitted any discussion of Dr. Akintayo's supplemental opinion and never weighed the opinion in the first instance. The ALJ here mentioned Dr. Akintayo's supplemental video testimony only in cursory fashion (i.e., noting that it in fact occurred), but he does not discuss it substantively at all. This is not a case where the ALJ merely failed to provide "greater detail"; rather, the ALJ never even acknowledged Dr. Akintayo's supplemental opinion nor weighed it, thereby preventing meaningful review by this Court.

### 2. Symptom-consistency evaluation

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g., Rogers*, 486 F.3d 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016) (rescinding and superseding SSR 96-7p). To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's

subjective description of symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms, including pain.  SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  This initial determination does not look at the *severity* of a claimant's pain or other symptoms, as explained in SSR 16-3p:

> [I]f an individual has a medically determinable impairment established by a knee x-ray showing mild degenerative changes, and he or she alleges extreme pain that limits her ability to stand and walk, we will find that individual has a medically determinable impairment that could reasonably be expected to produce the symptom of pain.  We will then proceed to step two of the two-step process, even though the level of pain an individual alleges may seem out of proportion with the objective medical evidence.

SSR 16-3p, 2016 WL 1119029, at *3.

Step two of symptom evaluation shifts to the severity of a claimant's symptoms.  ALJs must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.  *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *3.  In making this determination, the ALJ will consider the following:

(i)  Your daily activities;

(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;

16

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 1529(c)(3). *See also Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 404.1529(c)(3) and the predecessor to SSR 16-3p).

An ALJ may not consider *only* objective medical evidence of symptoms unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *6 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the

> individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *10.  *See also Rogers*, 486 F.3d at 248 (holding that the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight"); SSR 16-3p, 2016 WL 1119029, at *8 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility.  There is no indication that the ALJ failed to do so.  This claim therefore lacks merit. . . .").  Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).[8]

---

[8] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility."  With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference.  Sixth Circuit decisions subsequent to SSR 16-3p, however, have retained the notion of deference to the ALJ in the symptom-consistency context, though they have not directly acknowledged the change.  *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements."); *Perry v. Comm'r of Soc. Sec*., 734 F. App'x 335, 340 (6th Cir. 2018) ("[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.") (quoting *Jones*, 336 F.3d at 475); *Mason v. Comm'r of Soc. Sec.*, No. 17-2407, 2018 WL 6133750, at *2 (6th Cir. Apr. 30, 2018) (same).

Plaintiff argues that the ALJ's decision includes no analysis regarding the specific factors set forth in 20 C.F.R. § 404.1529(c). In particular, plaintiff argues that the ALJ did not consider limitations on her ability to work through the lens of her activities of daily living, her medications, the lack of pain relief with epidural steroid injections in the lumbar spine, or the precipitating or aggravating factors of plaintiff's pain. According to plaintiff, the record contains pertinent evidence relative to each, the absence of which prevents meaningful judicial review of the ALJ's symptom-consistency finding.

In her disability application, plaintiff alleged, "I cannot walk for more than 60 minutes due to severe pain. I cannot stand for more than 60 minutes due to severe pain. I can only do chores a little bit at a time and take frequent breaks." (Tr. 387). At the October 24, 2017, administrative hearing, plaintiff testified that she lived with her mother and drove without any medical restrictions but that her mother drove most of the time in an abundance of caution and that the longest she drove was thirty minutes. (Tr. 49-50). Plaintiff attempted to work as a cook at a restaurant for about a month in early 2017, but she "couldn't take the pain, back and forth cooking, always on my feet. I just couldn't handle it." (Tr. 50-51). Plaintiff testified to losing previous jobs due to back pain: "I started losing my dependability that I've had for years." (Tr. 60). She further testified that at her last job she frequently left early and was absent 7-10 days per month due to pain. (Tr. 61). Plaintiff also testified that she experiences pain when reaching in all directions. (Tr. 62). Plaintiff testified that she "d[idn]'t remember a day [she] d[idn]'t have pain." (Tr. 66). She estimated that around the onset of her disability, she could only walk for about 15-20 minutes. (*Id.*). Since she stopped working, she testified that she spent most of

her time lying on her back. (Tr. 67). She also testified that her legs become numb when sitting for too long. (Tr. 76).

Plaintiff has been prescribed Robaxin (Tr. 576), Neurontin (Doc. 776), and Vicodin (Tr. 600). Around her alleged onset date of disability, plaintiff was taking Vicodin and Neurontin, which caused dizziness 3-4 times per week. (Tr. 65). She has been administered epidural steroid injections in the lumbar spine over the course of many years (Tr. 596-653) without long lasting effect (Tr. 717). She reported completing physical therapy "without significant results." (*Id.*). Plaintiff reported that her condition improves with rest and worsens with activity. (*Id.*) She reported that she feels best lying down (Tr. 67) and that she often has to change positions, move around, and stretch to alleviate pain (Tr. 74, 76).

The ALJ determined that plaintiff's "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 30). However, the only "reason" the Court can discern from the ALJ's decision is the alleged inconsistency of the objective medical evidence with the severity of plaintiff's symptoms. (Tr. 30). This is contrary to the relevant agency regulation, which provides that statements about the intensity and persistency of pain and other symptoms will not be rejected solely based on objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2). The only other apparent consideration given by ALJ to non-objective medical evidence is his dismissal of plaintiff's mother as biased and a vague statement that he has given plaintiff "some benefit of the doubt" as to her exertional limitations. (Tr. 31). Nowhere in the ALJ's decision does he discuss plaintiff's daily activities or explain how such activities are inconsistent with the symptoms she

20

alleges.  (*See, e.g.,* Tr. 49-50 (driving limitations), 50-51, 60-62 (work limitations)).  Nor does the ALJ discuss or even mention plaintiff's pain medications or other treatments.[9]  (*See, e.g.,* Tr. 65, 576, 660, 776 (medications), 596-653 (spine injections), 717 (physical therapy)).  The same is true with respect to precipitating and aggravating factors.  (*See, e.g.,* Tr. 67 (symptoms are alleviated by lying down), Tr. 76 (sitting for long periods results in numbness)).

In sum, the record in this case contains a host of pertinent, non-objective medical evidence related to plaintiff's symptoms—virtually none of which was discussed or even mentioned in the ALJ's decision.  As set forth in SSR 16-3p, the ALJ must both consider this other evidence and specifically explain the weight afforded to it.  2016 WL 1119029, at *6, *10. Here, the ALJ's citation to the alleged inconsistency of plaintiff's symptoms with the objective medical evidence and reference to a single treatment, completed approximately three years before the alleged disability onset date, leaves the Court with no way to meaningfully evaluate his symptom-consistency determination.  *See Millsap v. Comm'r of Soc. Sec.*, No. 3:16-cv-103, 2017 WL 489745, at *6 (S.D. Ohio Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 749008 (S.D. Ohio Feb. 24, 2017) ("Because the ALJ failed to specifically articulate how he made his credibility determination, the undersigned concludes that the ALJ's credibility assessment is unsupported by substantial evidence.").  The ALJ's symptom-consistency assessment is therefore unsupported by substantial evidence.  Plaintiff's second assignment of error should be sustained.

---

[9] The Commissioner identifies a single treatment discussed by the ALJ in connection with plaintiff's physical impairments: her 2011 gastric bypass surgery.  (*See* Tr. 30).  This procedure occurred in 2011, approximately three years prior to her alleged disability onset date, and is not relevant to the ALJ's symptom-consistency finding.

**III.  This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date.  *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).  This matter should be remanded for further proceedings, including (1) a determination consistent with 20 C.F.R. §§ 404.1527(b) and (c) of the weight to be accorded to the opinion of Dr. Akintayo given during his supplemental video testimony; (2) a determination of the consistency of plaintiff's symptoms pursuant to 20 C.F.R. §§ 404.1529(a) and (c); and (3) further medical and vocational development as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _____12/23/2020_____

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KENDRA LAMB,                                          Case No. 1:19-cv-1091
      Plaintiff,                                     Black, J.
                                                     Litkovitz, M.J.
vs.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

23